ED ALEXANDER v. N. Y. WALKER and CORTEZ ISAACS.
and

J. V. STEPHENS v. N. Y. WALKER and CORTEZ ISAACS.

Middle Section.   April 16, 1932.

Petition for Certiorari denied by Supreme Court, December 17, 1932.

Wirt Courtney, of Franklin, for plaintiffs in error, Alexander and Stephens.

T. P. Henderson, of Franklin, and Lee Douglas and C. Wade Wilkes, of Nashville, for defendants in error, Walker and Isaacs.

CROWNOVER, J. These cases were tried together in the Circuit Court by agreement. They are actions for damages for personal injuries to occupants of an automobile hired from a "Drive-It-Yourself" Company, caused by the overturning of the automobile on the highway.

The declaration in each case contained two counts, (1) that the driver was the agent of defendants and the accident was caused by his negligence, and (2) that the steering apparatus of the automobile was defective. The defendants pleaded not guilty. The cases were tried by the judge and a jury. At the conclusion of all the proof defendants moved the court for a directed verdict in their favor in each case, because there was no proof showing that the injuries alleged in the declarations were caused by their negligence, as there was no proof that the driver, Still, was an agent of the defendants or that the automobile was defective. The court sustained the motion and directed the jury to return verdicts in favor of defendants, which was done, and judgments were entered and the actions dismissed.

Motions for new trials having been overruled, plaintiffs have appealed in error to this court and have assigned as error the court's action in directing verdicts, which errors are, in substance, as follows:

(1) The court erred in sustaining peremptory instructions because there was competent and credible proof in the record to show that G. A. Still was the duly authorized agent and servant of defendants and that the damages sustained by plaintiffs were directly and proximately due to the carelessness and negligence of said agent acting within the scope of his authority.

(2) The court erred in sustaining peremptory instructions because there was competent and credible proof in the record to show that the damages sustained by plaintiffs were directly and proximately caused by the carelessness and negligence of defendants in furnishing an unsafe and damaged automobile incapable of being properly operated, its condition being known to defendants.

On or about June 5, 1926, N. Y. Walker and Cortez Isaacs were partners in the taxi, oil and gas business, one of the departments of the Walker Tire Company, of Franklin. At the same time N. Y. Walker conducted a tire business and sold Chevrolet automobiles under the name of the Walker Tire Company, but Isaacs had no interest in this part of the business. The partnership conducted an automobile for hire, commonly called "Drive-It-Yourself", business.

Hon. Hill McAlister was a candidate for Governor of Tennessee, and his County headquarters were located in Franklin near the Harpeth Bank Building. Mr. Wirt Courtney, of Franklin, was his campaign manager, and his brother, Green Courtney, now deceased, was assisting in the campaign in Williamson County and was in charge of the headquarters at Franklin.

On June 5, 1926, Mr. McAlister was scheduled to speak at Columbia, Tennessee, 25 miles from Franklin. A number of parties were going over from Franklin to Columbia, by automobile, to hear him speak. Mr. Green Courtney decided to secure two automobiles to convey to the meeting some men who had no automobiles. He went to the office of Walker and Isaacs, saw Mr. Isaacs in person, and ordered two cars for this purpose, one with a driver and one without a driver. Isaacs made a charge on his books against Mr. Courtney for two cars and one driver for the trip from Franklin to Columbia and return. G. A. Still drove the car that was furnished without a driver.

Still was the father-in-law of Isaacs. About two weeks prior to this he had quit the insurance business and was unemployed at this time. He spent some of his time around the garage of the Walker Tire Company and a great deal of time at Mr. McAlister's head-

quarters. He was not employed in any capacity by the Walker Tire Company.

On the morning in question Still was assisting Mr. Courtney in getting up a crowd to go to Columbia. Mr. Green Courtney told him that he had arranged to get these two cars and that he did not have a driver for one, and Still told Courtney that he would be glad to drive it. Whereupon Courtney told him to drive it, so he went to the garage, told Isaacs what Courtney had said, and drove the car from the garage to McAlister's headquarters, where the two plaintiffs and two other gentlemen, Morton and Grimes, entered the car for the purpose of making the trip.

When they had proceeded about two and one-half miles toward Columbia, on the Columbia Pike, there were other cars in front of them. Immediately in front of them, and separating this car from the other cars going to the McAlister speaking, was a car driven by Alex Steele, now deceased. Still wanted to pass this car so that all the McAlister group would be together. He attempted to pass, but the other car remained in the middle of the road and he could not pass, so he undertook to pull his car back behind the other car, and fearing he would run into the front car Still applied his brakes. The road had been covered with fresh oil and gravel. When the brakes were applied the car skidded and turned over and the two plaintiffs were injured. There was evidence that this rented car had been shimmying for one-quarter of a mile before it reached the point of the accident.

The automobile rented from defendants was a Chevrolet touring car about six months old. It had been run that length of time but had never been in a wreck and had been driven less than four thousand miles. It was in good state of repair, equipped with good tires, and there was nothing wrong with the steering gear or machinery. One door had been removed just before the trip on account of a broken hinge.

1. Plaintiffs' assignment that the court erred in directing a verdict because there is proof in the record that Still was the agent and servant of defendants, cannot be sustained. Plaintiff Stephens was the only witness who undertook to testify that Still was an agent of defendants. Stephens testified:

"Well, a crowd of us were standing on the corner, and your brother Green said, 'I have to get some cars for this crowd to go to Columbia.' We were standing on the Harpeth Bank corner, and he called a certain garage, I don't remember just which one, I think Ballard's, I am not sure."

"Q. He called some garage other than the Walker Tire Co.? A. Yes, sir, and Mr. Still spoke up and said, 'Why not hire it from us, we have cars to rent.' "

The court ruled this was not competent to prove agency. Stephens said he "understood" Still was employed there as chauffeur and "thought" he was the father-in-law of Isaacs. He next said that he didn't know whether Still was an employee there or not. Alexander said Still stayed at the garage. This was all the testimony of the plaintiffs on the subject of agency.

Cortez Isaacs testified that Green Courtney rented the two cars, one with a driver and one without; that A. G. Still was not employed by him in any capacity, and never had been, and that he had never driven a car for him; that he had married Mr. Still's daughter about two years prior to the accident; that Mr. Still had been in the insurance business, being agent for the Metropolitan Life Insurance Co., at Franklin, until a short time before the accident; that when Mr. Still wished to use one of his company's cars he was compelled to hire one like anyone else; that Mr. Still did not hang around the garage any more than anyone else in Franklin; that he spent more time at McAlister's headquarters than elsewhere.

N. Y. Walker testified that he was a partner in the gas, oil and "Drive-It-Yourself" business, but was the sole owner of the tire business and the agency for Chevrolet cars; that Still was not employed by him as agent, employee, or servant.

G. A. Still testified that he had been with the Metropolitan Life Insurance Company until about ten days before the accident; that he spent a great deal of time at McAlister's headquarters; that, on June 5, 1926, they were interested in getting up a crowd to go to Columbia, and McAlister's headquarters furnished two cars; that Mr. Courtney made arrangements about renting the cars; that Courtney said he didn't have any driver, and he (Still) said he would drive; that he had no interest in the Walker Tire Company or the "Drive-It-Yourself" business; that he had never been employed by Walker or Isaacs.

None of this evidence is denied, and there is no evidence that Still was agent for the defendants, hence this assignment must be overruled.

2. The second count in the declaration in each case charges that defendant furnished plaintiff with "an unsafe, broken and defective automobile in that the steering apparatus was out of fix and out of line, and while proceeding on their journey to Columbia, and having arrived at a point on the Franklin Spring Hill Turnpike, without any fault of plaintiff, same became unmanageable, could not be properly steered and controlled, left the roadway, turned over and was demolished;" that his said damages were proximately due to the negligence and carelessness of defendants in furnishing said broken and defective car; and that defendants knew of the condition of said automobile or could have known the condition thereof by the exercise of ordinary care and caution.

The proof is that the automobile was ordered by Green Courtney, manager of the McAlister headquarters at Franklin, but the plaintiffs and their companions testified that they expected to pay the expense of it, but admitted that they had not paid or offered to pay. However, as we view it, this proposition is immaterial. They made no contract for hire with the defendants, but the fact that they were not bailees for hire would not prevent their recovering damages if the automobile was defective and its defective condition was the proximate cause of the injuries, provided, of course, the defendants knew or could have known of this condition by the exercise of ordinary care and caution.

"One who lets automobiles for use in public must exercise ordinary care to avoid letting a machine with defects which may injure persons coming in contact with it notwithstanding the fact that an automobile is not per se a dangerous instrumentality; but this duty does not rest upon contract of bailment but arises from obligations imposed on every man to refrain from acts which he may reasonably expect to result in injury." Vaughn v. Millington Motor Co., 160 Tenn., 197, 22 S. W. (2d), 226.

"One who lets an automobile for hire with knowledge or notice that it will be used upon the public highways, thus involving probable danger to others than the driver, is under duty to inspect the machine to the end that such danger may not arise. Every one of good sense and having proper regard for his fellows must foresee the danger, and, foreseeing, must take reasonable precaution against it. There is no intention to suggest that a person engaged in defendant's business becomes a guarantor of the absolute integrity of the machines he lets. We intend only to hold that he must exercise reasonable diligence to know the condition of his machines before letting them into the hands of drivers for use on the highways. He must in that regard exercise such simple and available tests as the intended use would suggest to sensible and right-minded persons—the jury being at last the judges." Saunders System v. Adams, 217 Ala., 621, 117 So., 72, 61 A. L. R., 1333; 38 C. J., 93, sec. 70; 4 Blashfield's Cyc. of Automobile Law, p. 2802; Berry on Automobiles (6 Ed.), sec. 1337.

But, of course, there must be some proof of neglect of duty in this respect for the case to be submitted to the jury. We are of the opinion that there is no proof in this case that defendants knew or by the exercise of reasonable care and caution could have known that the car was defective. Stephens, one of the plaintiffs, testified that they had driven two and one-half miles before the accident happened; that when the car first began shimmying he noticed it; that it started

about a quarter of a mile before they reached the point where they overturned. In answer to another question he said that after the car began shimmying it turned over, that he "didn't hardly have time to tell what happened, it was done so quick." Alexander, Grimes and Morton all testified that the automobile began to shimmy just before it turned over. There is no proof that the automobile was defective or shimmied before it left the garage. So it will be seen that if the car developed this defect, it was after it had left the garage of defendants and had gone at least two and a quarter miles.

The defendants introduced much proof that the car was in good condition and they had no notice of any defects when it left the garage. They proved that one of the attendants examined the car and filled it with oil and gasoline before it was let to Mr. Courtney and that it was in good condition. Some said it was in perfect condition. Others who drove the car immediately before the accident said there was nothing the matter with it and it was in good condition.

The proof shows that shimmying is caused by a loose tire, or by the wheels being out of alignment, or because the axle or spindle posts are worn, and this causes the wheels to wabble, which is transmitted to the steering wheel, and is called shimmying. But there is no proof that this automobile shimmied at any time before it was let to Mr. Courtney. In fact, if the automobile shimmied on this occasion, it is not shown what defect caused it to shimmy.

The defendants proved that the road had been recently repaired and freshly oiled, and when the driver applied the brakes and cut the steering wheel in order to prevent a collision with another car, this car skidded and turned over. This is not contradicted, except that the plaintiffs said it shimmied and turned over.

The plaintiffs insist that the shimmying caused the accident, and was the result of the defective condition of the car, which could have been ascertained by a proper inspection before the car was let to Courtney, and that all these matters were questions for the jury.

But the proof shows that this was practically a new car, that it had been in use only six months and had been driven between three and four thousand miles; that it has been inspected before it was let to Courtney, and was in good condition and had showed no evidences of a defective condition which would cause it to shimmy, before it was hired to Courtney; hence, there is no evidence that the defendants had any knowledge of its defective condition before it was let. Where a car is practically new and there is nothing to put the motor company on notice of defects, it is not incumbent upon the motor company to take the car apart and minutely inspect each part for defects before each hiring. This would be impracticable and no such duty rests upon the motor company, but if upon driving such car or in-

specting it a defect appears or if something occurs to put the motor company on notice of the defect then it is the duty of the motor company to follow it up and ascertain whether the car is defective and dangerous. One who lets automobiles for use in public must exercise ordinary care to avoid letting a machine with defects which may injure persons coming in contact with it. This duty arises from the obligations imposed on every man to refrain from acts which he may reasonably expect to result in injury. This being true, the defendants exercised reasonable care to see that the car was in proper repair before it was let out, and the defect of shimmying developed after it had been driven at least two and one-quarter miles.

"Without proof that the owner knew or should have known of defect in automobile causing injury, there was failure to prove negligence." Mathis v. Mathis (Ga.), 155 S. E., 88.

It results that the assignments of error must be overruled and the judgments of the lower court dismissing the actions must be affirmed. The cost of the cause including the cost of the appeal is adjudged against the plaintiffs in error, Ed Alexander and J. V. Stephens, and the surety on the appeal bonds, for which executions may issue.

Faw, P. J., and DeWitt, J., concur.